UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | DOCKET NO. 1:18 CR 00069-001 |
| *Plaintiff* | : | |
| v. | : | (JUDGE JONES III) |
| | : | |
| JERRELL TATE | : | (ELECTRONICALLY FILED) |
| *Defendant* | : | |

## DEFENDANT'S PRE-SENTENCING MEMORANDUM

**AND NOW**, comes the Defendant, Jerrell Tate, by and through his counsel, Jonathan R. White, Esquire, and submits the following Pre-Sentencing Memorandum, respectfully requesting the Honorable Court consider the information submitted herein.

### I. Procedural History

Jerrell Tate was charged in a two (2) count Indictment on February 21, 2018, charging him with possession with the intent to distribute heroin and fentanyl in violation of 21 U.S.C. §841(a)(1) and felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

On March 2, 2018, Jerrell was arraigned and detained at his initial appearance. On October 15, 2018, Jerrell pled guilty to Count I of the Indictment. An agreement was in place for a three (3) level departure for acceptance of responsibility.

A presentence report was prepared wherein Jerrell was classified as a Career Offender under §4B1.1(b) due to two (2) prior possession with the intent to deliver

1

charges from 2011 and 2014. Because the statutory maximum term for the case is 25 years or more, Jerrell's base level offense is 34; however, there is an agreement for a three-level reduction for acceptance of responsibility. Therefore, the final base level is 31. Jerrell has a Criminal History Category of VI, per USSG §4B1.1(b). The advisory Guideline Range is 188-235 months.

II.     **Brief Statement of the Case**

On or about August 3, 2017, Pennsylvania State Parole Agent Allen Shipley went to Jerrell's house for a routine home check. Upon arriving, Agent Shipley observed a man enter Jerrell's home carrying a small black plastic bag. While approaching the residence, Agent Shipley observed the man leave the residence without the black bag. As Agent Shipley entered the residence, he encountered Jerrell who initially denied any knowledge of a black bag; however, he consented to a search of his residence. Inside a trashcan in the kitchen was a black bag that contained 20 grams of heroin and fentanyl.

A further search of the residence discovered four boxes of wax paper boxes, money, a phone and a concealed carry permit for Patrice Randolph, the owner of the home. Inside Ms. Randolph's vehicle was a registered 9mm Ruger pistol that belonged to Ms. Randolph. Jerrell was subsequently arrested and detained.

### III. Downward Departures[1]

Jerrell's criminal history is deceiving as it does not accurately reflect his past indiscretions. Jerrell's criminal history comes from four (4) prior convictions. When he was 16, he had a juvenile adjudication from 2009 for possession of a controlled substance and possession of a firearm by a minor. He also has a 2011 possession of a controlled substance charge when he was 18. Following that, he has 2 convictions for possession with the intent to deliver which makes him a Career Offender.

If a court believes that "reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted." *See* USSG §4A1.3(b)(1). The Courts have recognized imprecision that is inherent in criminal history designations. This led to Amendments to the law allowing a Court to downwardly depart no more than one (1) criminal history level for designated Career Offenders. *See* USSG §4A1.3(b)(3)(A).

The Career Offender designation places Jerrell in a criminal history category that represents criminal history points of 13 or more. In actuality, calculating *only*

---

[1] Mr. Tate did not raise this Downward Departure at the time of his objections to the Presentence Report. After reviewing additional information, it was discovered and believed that this departure was applicable. Therefore, undersigned counsel contacted the AUSA and probation regarding this error and sought concurrence in raising it here in the sentencing memorandum. It is submitted that even should this departure not be warranted as timely, the same arguments are sufficient in support of a variance. AUSA Marchioli and Probation Officer Crystal Bard responded on April 3, 2019, indicating they had no objection to the inclusion of the request for the departure in this sentencing memo.

points for his criminal history convictions Jerrell's criminal history points would be 7, or 9 with the additional 2 points for a conviction while on supervision. Therefore, his criminal history designation would otherwise be IV. The Career Offender categorization boosts Jerrell's criminal history 2 levels, adding 4 – 6 more points to his criminal history points.

Jerrell's convictions involve drugs and are an indication of drug addiction. While drug charges are certainly serious and dangerous, his charges mainly involved marijuana and cocaine. This is the first charge and conviction involving heroin and/or fentanyl. While these issues will be delved into in more detail below, Jerrell's history is a clear indication of a person in need of drug treatment and that of a low-level drug dealer selling merely to make ends meet financially and to support a habit. Given Jerrell's age and the types of charges he has had, it is believed and averred that the criminal history designation of VI under Career Offender over-represents the seriousness of Jerrell's record.

Should the court be inclined to grant the downward departure, Jerrell's new criminal history category would be **V** with a new guidelines range of **168-210**.

IV.    **Section 3553(a) Factors**

In accordance with Booker, this Honorable Court is directed to undertake a three (3) step process to impose a sentence: "(1) calculate the applicable Guidelines range, (2) formally rule on any departure motions, and (3) exercise its discretion in applying the factors set forth in 18 U.S.C. §3553(a)." United States v. Grier, 585 F.3d 138 (3d

4

Cir. 2009). The ultimate goal in sentencing is for the Court to impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" of sentencing set forth in 18 U.S.C. §3553(a)(2).

Jerrell had a tumultuous childhood that had a strong effect on his childhood and life. Jerrell is only 26 years old, but he has experienced a lot of issues at his young age.

Jerrell does not have a father. He knows who he is, but he is never around, and he does not talk with him. Jerrell attempted to reach out to him to try and build a relationship, but his father never followed through. Jerrell classified his "relationship" with his father as a person who is always breaking promises. The opposite of his father is his mother, Yolanda. She was always there for him and took care of Jerrell and his two (2) older siblings. He sees his mother as a hard-working provider for her family. He stated of his mother, "she always worked but still struggled to make ends meet because she was trying to do a million things at once with no help."

Jerrell explains that this had a negative effect on him. He became sad and depressed. He lived a life with no father when everyone around him had a father or father figure in his life. While he has great adoration and love for his mother, his mother could not teach him stuff life a father could or should. He watched his mom struggle and work tirelessly and still just tread water. He had two (2) older siblings but they were never around to help. Jerrell needed something to cope with his pain and anguish and that led him to drugs.

When he was young, about 15, he saw a lot of people using marijuana. Those people were using it to "chill out," so Jerrell started to use it. He stated that marijuana made him feel better and "made everything go away." In high school, Jerrell struggled to get a job. At home, his mother was struggling to pay for clothes, transportation, food, and bills. Jerrell looked at selling drugs as an opportunity to help his stressed mother. He began selling marijuana. This was a means to an end for Jerrell. That end was financial stability for his family. His siblings did not want to help around the house, so he sold marijuana to help pay bills. Jerrell did not have the newest and most stylish clothes. He did not have excessive spending money. There is no denying some money was used for Jerrell; however, the purpose of his sales and the bulk of his money did go to his family.

When asked about the fact that he was selling drugs Jerrell had a very solemn look and response. He stated, "I watched my mom struggle since I was a child and couldn't do anything. Now that I was older, I could help." He went to say "it was there. I put in for jobs, I followed up, but I never got hired. Drugs were able to be sold to get money but no jobs came through." When asked about whether he believed he would end up where he is now, in federal court facing severe punishment, Jerrell responded "I didn't expect to be *here*. I was doing it to help pay bills and help mom, I wasn't doing it for the fun of it or the lifestyle."

Jerrell does have a history of drug use. That is evident as his entire criminal record centers on drug addiction. Jerrell discussed his prior charges and drug use and

it all revolves around addiction and the need to be healed emotionally. When asked about his deterrence from his prior charges, Jerrell claimed that he "was still addicted. I kept using so I kept selling. Those feelings and emotions never went away."

Jerrell's evolution into heroin began with a woman he was dating in May 2017. He met a woman who was into it and she would tell Jerrell how it made her feel. It became enticing to Jerrell and he tried it. It made him feel good; better than marijuana would. Jerrell would go through a rollercoaster of feelings with heroin. He wanted to get off heroin, but like most addicts, he couldn't. He tried to take Percocet to quit heroin, but he did not like how it made him feel. He began using heroin whenever this woman would buy it. He would use it as needed on a weekly basis, no more than 5 bags per week.

Jerrell does not need to spend his life in jail to be a productive member to society. A minimal sentence of incarceration, if any, with the mandatory post-release supervision, is most appropriate for Jerrell. Such a sentence would permit Jerrell to receive a just punishment and ensure he receives structured drug treatment. Such a sentence would also ensure Jerrell can return to his family to help his mother and raise his young children. Jerrell has shown that he has the ability and drive to stay out of trouble and be a productive member to society. He is willing to accept responsibility for his actions and wants to better himself for his own benefit and as an example to his family.

Important to highlight for Jerrell is what he has done with his time in prison. In

2016, while in state prison, Jerrell prepared for, studied, took and passed his GED requirements. He achieved his GED in 2016. He has taken initiative to find a new driving force in life. He became interested in accounting and business classes. He is in some classes now in hopes to soon achieve an accounting certificate that can benefit him in his future. Also, he has taken drug treatment classes when he was in county prison as well as parenting and behavioral classes. These actions by Jerrell illustrate that with appropriate structure and drive he can be productive with his time.

One of the most troubling aspects of Jerrell's life is his time away from his children. Jerrell has three (3) children: Mahkii (7), Jerrell, Jr. (7), and Kassid (3). Jerrell would live with or speak to his kids when he was not incarcerated. He is a loving and devoted father. When asked what it was like being in jail and having young kids you could actually see the effect it has on Jerrell's face. He is torn and regrets knowing that his children know where he is. He stated, "it hurts. I don't want them to be like I am. Every day I used [drugs] I kept as a secret. I didn't want to bring that around them." Things did not get easier for Jerrell during any visits from his children. He reflected on this by focusing on the environment he is in. While it is a joy to him to see them visit, it's very hard to see them leave and watch his children cry.

While discussing his children, Jerrell makes correlations to his own childhood. He recognizes that his actions took him away from his children and now they will grow up without a father, like he did. He explains, "even though I am here, and they visit me, it still has an effect on them. I cannot be there for them when they need me.

Trying to teach a little boy from jail, they don't listen. It won't work. They need to see it. They need to see me teach them stuff, not just hear it." Jerrell has a desire to get home sooner to get to his kids so he can teach them to be better than himself, "while they are still kids."

Crucial to Jerrell's sentencing is his history and the time he has spent incarcerated. As mentioned above, the Career Offender designation amends Jerrell's criminal history to VI and his adjusted base level to 34. However, this is not a true reflection of Jerrell's history. Jerrell's criminal history would only be a IV if he was not designated a career offender. Although Jerrell has two (2) prior felony drug convictions, he is not a high-level drug dealer. His prior convictions include low-level drug sales to an undercover officer or low-level possession with the intent to deliver. Jerrell is not trafficking massive amounts of drugs throughout Pennsylvania or over the state borders. There is no doubt that he assists this process through his low-level sales, but he is a young adult with an addiction and should be viewed as such.

Jerrell should be punished as an addict who sells to support a habit. The most severe sentence he has received is a 3-6 year sentence from his 2012 drug sentence. He was released prior to that minimum because he was made Boot Camp eligible. He completed that program without issue. The longest time he has been incarcerated for is a little over 30-months. The minimum sentence as is stands from the PSR (188 months) is six (6) times more than the most amount of time he has spent incarcerated. A guideline sentence would create a burden on Jerrell's mother, children, and the

mother of his children. If sentenced within the PSR's standard range of over 15 years, Jerrell's children will be adults—adults without a father in the most important times of their lives.

When confronted about the fact of the PSR's range, Jerrell visibly sank in his seat, "I'll be 41 when released. That's sad, it's not right. I know I should be punished, but it's not right. It's hard to put into words." Jerrell does have strong family support from his mother, aunt, and his children.

Jerrell has proven that he can and will use his time wisely while incarcerated. During his time in state incarceration he had achieved his GED in 2016 and, as previously stated, completed intense programs such as Boot Camp. When released from incarceration Jerrell wants to obtain a job in business and open his own business. He wishes to open a foundation to "stop people from going through what I went through. Helping single moms and help teach kids things who don't have father figures." When asked about how he can use his time in prison to achieve that he immediately had a plan, "set a plan of action and take notes on how to work with people, proper planning, activities, and overall game plan." He went on to say that he "wants to expand on the idea of the Boys and Girls Club. I was there once, and they didn't teach you anything. There are still bullies and cliques. All we did is go on trips and play games. I want to bring skills and my experiences to show the kids what they should and shouldn't do. I want to teach them stuff to avoid my mistakes and help them make good decisions." He has been taking accounting and business classes while

in SCI Dallas to help him achieve this goal. It is something he has become excited about and enjoys.

Jerrell is an adult and had a troubled past. He has had chances and is now before Your Honor under more serious circumstances than he ever thought he would be. But, Jerrell is young. While he is an adult, he is still a child in life. Despite everything he's gone through his family has not given up on him and we should not either. He needs to be punished for the crimes he committed and admitted to; however, his penalty should be just and fair relative to everything in his life. He should be treated as an addict and receive help for addiction while incarcerated.

V.    Conclusion

**WHEREFORE**, for the reasons set forth above, Jerrell Tate, respectfully requests This Honorable Court consider the forgoing information when deciding upon an appropriate sentence.

Respectfully submitted,

**Dethlefs-Pykosh, LLC**

Date: April 10, 2019      *Jonathan R. White, Esquire/s/*
Jonathan R. White, Esquire
2132 Market Street
Camp Hill, PA 17011
(717) 975-9446
Attorney I.D. # 313808
*Attorney for Defendant*