IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 1:18-cr-69 |
| | : | |
| v. | : | (Chief Judge Jones) |
| | : | |
| JERRELL TATE, | : | |
| Defendant | : | Electronically filed |

## UNITED STATES' BRIEF IN OPPOSITION TO MOTION FOR A REDUCTION OF SENTENCE UNDER 18 U.S.C. § 3582(c)(1)(A)(i)

The Court should deny Defendant Jerrell Tate's motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). That motion is based in large part on the current COVID-19 pandemic. Tate—who was offered but refused the COVID-19 vaccine—has not established the required extraordinary and compelling reasons. Nor has he demonstrated that he is no longer a danger to the community and that the factors under 18 U.S.C. § 3553(a) support his premature release. Tate has committed multiple serious drug-trafficking crimes, culminating in the conviction in this case. He should be required to serve the remainder of his sentence.

# PROCEDURAL AND FACTUAL BACKGROUND

## I. Tate's conviction

In October 2018, Tate pleaded guilty to possession with intent to distribute heroin and fentanyl, in violation of 21 U.S.C. § 841(a)(1) (count 1). Doc. 4; Doc. 46. As recounted in the PSR, the charge related to Tate's possession, while on parole, of 20 grams of a substance that contained heroin and fentanyl. Doc. 50 ¶¶ 5-6. Officers also found drug-packaging materials in Tate's residence and his girlfriend's vehicle. *Id.* ¶ 7-8. A loaded pistol was also found in the vehicle. *Id.* ¶ 8.

Tate has multiple prior drug-trafficking convictions and is a career offender under the sentencing guidelines. Doc. 50 ¶¶ 20, 26-27. His guideline range was 188 to 235 months. *Id.* ¶ 54. The Court varied downward and sentenced him to 132 months' imprisonment to be served consecutively to an anticipated sentence on his state parole revocation. Doc. 62.

Tate is presently incarcerated at FCI McDowell. His projected release date is September 2, 2028.

## II. Tate's request for a sentence reduction

On November 25, 2020, Tate submitted to his institution a request for a sentence reduction under 18 U.S.C. § 3582 based on various health conditions and the COVID-19 pandemic. Doc. 64-1, at 1-4. The warden of his institution denied the request on January 11, 2021. *Id.* at 5

On February 3, 2021, Tate filed a sentence-reduction motion. Doc. 64. The Court appointed the Federal Public Defender to represent Tate in connection with the motion. Doc. 65. Counsel subsequently filed a brief in support of Tate's motion. Doc. 66.

## III. The BOP's response to the COVID-19 pandemic

As the Court is well aware, COVID-19 is a dangerous illness that has caused many deaths in the United States and that has resulted in massive disruption to our society and economy. In response to the pandemic, the BOP took significant measures to protect the health of the inmates in its charge. On March 13, 2020, the BOP began to modify its operations, in accordance with its COVID-19 Action Plan, to minimize the risk of COVID-19 transmission into and inside its facilities. Since that time, as events require, the BOP has repeatedly revised the Action Plan to address the crisis. Details about the BOP's

current modified operations are available at https://www.bop.gov/coronavirus/covid19_status.jsp.

The BOP has also administered over 175,000 doses of the COVID-19 vaccine to inmates and BOP staff. *See* BOP, "COVID-19 Vaccine Implementation," https://www.bop.gov/coronavirus/. As noted below, Tate was offered, but refused, the vaccine. Additionally, in an effort to relieve the strain on BOP facilities and assist inmates who are most vulnerable to the disease and pose the least threat to the community, the BOP is exercising greater authority to designate inmates for home confinement. As of this filing, the BOP has transferred 25,707 inmates to home confinement since March 26, 2020. *See* BOP, "COVID-19 Home Confinement Information," https://www.bop.gov/coronavirus/.

Taken together, all of these measures are designed to mitigate sharply the risks of COVID-19 transmission in a BOP institution. The BOP has pledged to continue monitoring the pandemic and to adjust its practices as necessary to maintain the safety of prison staff and inmates while also fulfilling its mandate of incarcerating all persons sentenced or detained based on judicial orders.

Tate's institution, FCI McDowell, currently has two confirmed inmate cases of COVID-19 and four confirmed staff cases. BOP, "COVID-19 Cases," https://www.bop.gov/coronavirus/.

## ARGUMENT

The Court should deny Tate's motion for two independent reasons. First, he has not established the required extraordinary and compelling reasons. Second, he has not established that his premature release is justified under the factors in 18 U.S.C. § 3553(a) and that he is no longer a danger to the community.[1]

### I. Tate has not established the required extraordinary and compelling reasons.

Under § 3582(c)(1)(A)(i), a court may reduce a defendant's term of imprisonment "after considering the factors set forth in [§ 3553(a)]" if

---

[1] Before filing a motion under § 3582(c)(1)(A), a defendant must first request that the BOP file the motion on his behalf. 18 U.S.C. § 3582(c)(1)(A). A court may entertain the defendant's own motion only if the motion was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* Tate satisfied § 3582(c)(1)(A)'s exhaustion requirement by filing his institution request in November 2020 and waiting at least 30 days before filing his current motion. *See* Doc. 64-1, at 1-4.

the Court finds that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). As the movant, the defendant bears the burden to establish that he is eligible for a sentence reduction. *See, e.g.*, *United States v. Cruz-Rivera*, 2020 WL 5993352, at *7 (E.D. Pa. Oct. 9, 2020).

The Sentencing Commission has issued a policy statement addressing reduction of sentences under § 3582(c)(1)(A). As relevant here, the policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction"; (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (iii) "the reduction is consistent with this policy statement." USSG § 1B1.13.

The policy statement includes an application note that specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease,

6

[or] advanced dementia." USSG § 1B1.13, comment. (n.1(A)(i)).  Second, the standard is met if the defendant is:

> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

USSG § 1B1.13, comment. (n.1(A)(ii)).  The application note also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances.  USSG § 1B1.13, comment. (n.1(B)-(C)).  Finally, the note recognizes the possibility that the BOP may identify other grounds that amount to "extraordinary and compelling reasons."  USSG § 1B1.13, comment. (n.1(D)).

Tate seeks to establish extraordinary and compelling reasons based on the combination of certain medical conditions and the current

pandemic.[2] Doc. 66, at 4. Critically, however, Tate was offered—but refused—the COVID-19 vaccine in April 2021. Doc. 66-1, Ex. A, at 53. Based on that fact, his reliance on the pandemic is unavailing, and he has not established the required extraordinary and compelling reasons. *See, e.g., United States v. Garcia*, 2021 WL 1499312, at *3 (C.D. Ill. Apr. 16, 2021) ("Courts across the country appear to have consistently ruled that an inmate's refusal of a COVID-19 vaccine weighs against a finding of extraordinary and compelling circumstance to justify relief. Indeed, while Defendant is not obligated to take the vaccine, it is inconsistent for him to both claim fear of risk of contracting the virus while refusing medical treatment that would drastically reduce his risk." (citations omitted)). His motion should be denied on that basis alone.

---

[2] Tate tested positive for COVID-19 in November 2020. Doc. 66-1, Ex. A, at 9. His counseled brief does not allege that he experienced significant symptoms due to the virus. *E.g.*, Doc. 66, at 1.

## II. Tate has not demonstrated that the § 3553(a) factors support his immediate release and that he is no longer a danger to the community.

Assuming that Tate has presented an extraordinary and compelling reason, the Court should nonetheless deny his motion based on the § 3553(a) factors and the fact that Tate has not shown that he is no longer a danger to the community.[3] The following facts weigh strongly against Tate's immediate release.

First, Tate was convicted of an incredibly serious offense involving the possession with intent to distribute heroin and fentanyl. Doc. 50 ¶¶ 5-9. He committed the offense, moreover, while on parole for another drug-trafficking offense. *Id.* ¶¶ 26, 29.

Second, in addition to Tate's offense in this case, his criminal history further justifies his continued incarceration. Tate is a career offender under the sentencing guidelines. Doc. 50 ¶ 20. Additionally, his encounters with law enforcement began no later than the age of 16. *Id.* ¶ 24. And he has multiple prior offenses involving the possession of

---

[3] Tate asserts that the § 3553(a) factors are relevant in "decid[ing] upon the scope of the reduction." Doc. 66, at 4. That is true enough. But the Court must also consider those factors in deciding whether to grant a reduction in the first place. *See* 18 U.S.C. § 3582(c)(1)(A).

firearms. *Id.* ¶¶ 24, 26. Based in large part on his criminal history, Tate's guideline range was 188 to 235 months. *Id.* ¶ 54. And he has served well below half of the 132-month sentence imposed by the Court. The entirety of Tate's record is an additional reason he should be required to serve the remainder of his sentence. Tate will of course be entitled to his release at the expiration of his sentence. But releasing him now would conflict with the need for the sentence to protect the public, provide just punishment, promote respect for the law, reflect the seriousness of his offense, and afford adequate deterrence.

Finally, there is no indication that Tate (who is currently 28 years old) is in failing health, or that the BOP would be unable to care for him if he became ill. Tate, moreover, does not provide the information necessary for the Court to find that he would be at relatively less risk of becoming seriously ill if released. He asserts only that he could be placed under the supervision of his family in Harrisburg. Doc. 66, at 7. He provides no information about with whom he would live, whether he would work, and how he would attempt to avoid contracting COVID-19. In short, there is no basis for the Court to conclude that Tate's release

would make it less likely that he would contract COVID-19 and develop a serious illness.

In light of Tate's offense, his criminal history, and the totality of the relevant circumstances, the Court should deny his request for immediate release.

## CONCLUSION

The Court should deny Tate's motion for a reduction of sentence.[4]

Dated:  May 21, 2021    Respectfully submitted,

BRUCE D. BRANDLER
Acting United States Attorney

/s/ Carlo D. Marchioli
Carlo D. Marchioli
Assistant U.S. Attorney
PA 309217
228 Walnut Street, Suite 220
Harrisburg, PA  17108
Tel:  (717) 221-4482
Fax:  (717) 221-4493
carlo.d.marchioli@usdoj.gov

---

[4] If the Court elects to grant Tate's motion, then the Government respectfully requests a 14-day quarantine period and medical clearance prior to release to minimize the possibility of any spread of COVID-19 from Tate to the public.

# **CERTIFICATE OF SERVICE**

I certify that on May 21, 2021, I served the foregoing document by electronic service on the following individual:

Quin M. Sorenson, Esq.
quin_sorenson@fd.org

/s/ Carlo D. Marchioli
Carlo D. Marchioli
Assistant U.S. Attorney